## UNITED STATES BANKRUPTCY COURT FOR THE
## NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 15** |
| **Petition of Big Sky Farms Inc. by** | ) | |
| **Ernst & Young, Inc., as its Receiver** | ) | |
| | ) | **Bankruptcy No. 12-01711** |
| Debtor in a Foreign Proceeding. | ) | |
| | ) | |

| | | |
|---|---|---|
| | ) | |
| **Farmers Cooperative Company,** | ) | |
| **Hinton, Iowa,** | ) | |
| | ) | |
| Plaintiff, | ) | **Adversary No. 13-09038** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **Ernst & Young Inc., in its official** | ) | |
| **capacity as Receiver for Big Sky Farms** | ) | |
| **Inc., and Big Sky Farms, Inc.** | ) | |
| | ) | |
| Defendants. | ) | |

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

These matters came before the Court on the Cross-Motions for Summary

Judgment. Plaintiff Farmers Cooperative Company, Hinton, Iowa and Defendant

Ernst & Young, Inc., in its official capacity as Receiver for Big Sky Farms, Inc.,

each filed summary judgment motions. The Court held a telephonic hearing.

Lance Ehmcke and Peter Leo appeared on behalf of Plaintiff Farmers Cooperative

Company, Hinton, Iowa. Julie McLean and Elizabeth Meyer appeared on behalf of

Debtor in a Foreign Proceeding, Big Sky Farms, Inc., and Ernst & Young, Inc., in

its official capacity as Receiver for Big Sky Farms, Inc., as appointed in the

Canadian bankruptcy proceeding and recognized by this Court in this Chapter 15

case.  The Court took the summary judgment motions under advisement.  This is a

core proceeding under 28 U.S.C. § 157(b)(2)(K).

## STATEMENT OF THE CASE

Farmers Cooperative Company, Hinton, Iowa ("FCC") filed this case

asserting its lien priority in cash held in a bank account by Ernst & Young, Inc.

(the "Receiver").  The parties dispute whether the Receiver, which holds

approximately $1.5 million to pay Debtor's creditors, has paid FCC's claim to the

extent required.  This case, like another case currently pending before this Court,

addresses the continuing applicability of this Court's decision in In re Shulista,

451 B.R. 867 (Bankr. N.D. Iowa 2011) following the Iowa Supreme Court's

decision in Oyens Feed & Supply, Inc. v. Primebank, 808 N.W.2d 186 (Iowa

2011).  FCC argues that this Court's decision in Shulista should no longer apply.

The Receiver supports the continuing validity and analysis from Shulista.

The parties characterize this case as a legal question on undisputed facts.  For the

reasons stated below, the Court finds that one factual issue exists, but that the

Receiver's Motion for Summary Judgment and FCC's Motion for Summary

Judgment may both be granted in part.

# BACKGROUND

Debtor is a Canadian corporation that operates part of its hog business in Iowa. Debtor had serious financial problems and filed for bankruptcy in Canada. On September 10, 2012, the Canadian Court of Queen's Bench for Saskatchewan, Judicial Centre of Saskatoon appointed Ernst & Young, Inc. as Receiver for Debtor.

On September 12, 2012, the Receiver filed a Chapter 15 Petition with this Court, seeking recognition of the foreign proceeding. On a request from the Receiver, this Court entered an Order on December 3, 2012 recognizing the Canadian bankruptcy proceeding, granting comity, and giving full force and effect to the Canadian proceedings. The Order also authorized the Receiver to act for Debtor with respect to Debtor's property located in the United States. The Order required the Receiver to continue to feed and then sell Debtors' entire remaining hog inventory once it was ready for market. The Order then required the Receiver to set aside $1,500,000 of the proceeds from the sale into an account to pay Debtor's creditors. Additionally, the Order specifically provided that liens on the livestock would continue in the proceeds from the sale. The Receiver sold the hogs and as of January 11, 2013, the proceeds in the account totaled $1,506,928.04.

FCC is a feed supplier to Debtor.  FCC submitted a proof of claim to the Receiver for $120,444.51.  On February 1, 2013, the Receiver paid FCC $74,045.15 of its claim.  FCC filed this adversary, seeking payment of the remainder of its claim from the hog proceeds.

FCC argues that it has a perfected agricultural lien under Iowa Code § 570A and is entitled to payment of the full amount of its claim from the proceeds.  FCC has argued, like other suppliers in currently pending cases and matters under submission to this Court, that this Court's decision in In re Shulista, 451 B.R. 867 (Bankr. N.D. Iowa 2011) is inconsistent with the Iowa Supreme Court's interpretation in Oyens Feed & Supply, Inc. v. Primbank, 808 N.W.2d 186 (Iowa 2011).  FCC argues that under Oyens Feed, this Court is required to revise the Shulista rule.  Under this revised rule, FCC maintains that it is perfected for the full amount of its claim. The Receiver resists, arguing that this Court's interpretation of the Agricultural Supply Dealer Lien in Shulista continues to be valid and thus FCC only has a perfected agricultural lien in the amount of $74,045.15.  The Receiver alleges that under Shulista, the remaining $45,729.36 of FCC's claim is not perfected as an agricultural lien because FCC did not file a financing statement within 31 days of selling the feed to Debtor.

The parties have two additional disputes.  The parties disagree about how payments should be applied to outstanding invoices.  FCC argues that the oldest

4

outstanding invoice should be paid first.  The Receiver argues that payments from

the Receiver to FCC should be applied to the invoice the Receiver intended to pay.

If <u>Shulista</u> is still valid and FCC is only perfected for the 31 days prior to filing a

financing statement, then the determination of which invoices remain unpaid alters

the amount that FCC's agricultural lien is perfected.  Additionally, the Receiver

argues that FCC does not have a perfected agricultural lien for the fees that were

included with each order.  FCC disagrees and argues that these fees are part of the

retail cost and are covered under the agricultural lien statute.

## CONCLUSIONS OF LAW AND DISCUSSION

### A. <u>Summary Judgment Standard and Parties' Arguments.</u>

Summary judgment is governed by Federal Rule of Bankruptcy Procedure

7056.  Rule 7056 applies Federal Rule of Civil Procedure 56 in adversary

proceedings.  Fed. R. Bankr. P. 7056.  Rule 56 states, in relevant part, that: "The

court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  Granting "[s]ummary judgment is proper if, after

viewing the evidence and drawing all reasonable inferences in the light most

favorable to the nonmovant, no genuine issues of material fact exist and the

movant is entitled to judgment as a matter of law."  <u>Hayek v. City of St. Paul</u>, 488

F.3d 1049, 1054 (8th Cir. 2007).  Summary judgment is appropriate when only

5

questions of law are involved.  <u>Anderson v. Hess Co.</u>, 649 F.3d 891, 894 (8th Cir.

2011).

The burden of showing there are no genuine issues of material fact belongs

to the moving party.  <u>Winthrop Res. Corp. v. Eaton Hydraulics, Inc.</u>, 361 F.3d 465,

468 (8th Cir. 2004).  "Once the movant has supported the motion, the non-moving

party 'must affirmatively show that a material issue of fact remains in dispute and

may not simply rest on the hope of discrediting the movant's evidence at trial.'"  <u>In

re Houston</u>, 385 B.R. 268, 271 (Bankr. N.D. Iowa 2008) (quoting <u>Barge v.

Anheuser-Busch, Inc.</u>, 87 F.3d 256, 260 (8th Cir. 1996)).

"A 'material' fact is one 'that might affect the outcome of the suit under the

governing law . . . .'"  <u>Johnson v. Crooks</u>, 326 F.3d 995, 1005 (8th Cir. 2003)

(quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  An issue of

material fact is genuine if a reasonable fact-finder could return a verdict for the

nonmoving party on the question.  <u>Anderson</u>, 477 U.S. at 252.  Evidence that raises

only "some metaphysical doubt as to the material facts" does not create a genuine

issue of fact.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio, Corp.</u>, 475 U.S. 573,

586 (1986).  "'Where the record taken as a whole could not lead a rational trier of

fact to find for the nonmoving party, there is no genuine issue for trial.'"  <u>In re

Patch</u>, 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting <u>Matsushita Elec. Indus. Co.</u>,

475 U.S. at 587).

"Where the litigants concurrently pursue summary judgment, each motion must be evaluated independently to determine whether there exists a genuine dispute of material fact and whether the movant is entitled to judgment as a matter of law." St. Luke's Methodist Hosp. v. Thompson, 182 F. Supp. 2d 765, 769 (N.D. Iowa 2001). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact." Sam's Riverside, Inc. v. Intercon Solutions, Inc., 790 F. Supp. 2d 965, 975 (S.D. Iowa 2011) (quoting Wermager v. Cormorant Twp. Bd., 716 F.2d 1211, 1214 (8th Cir. 1983)). "The Court may discover questions of material fact even though both parties, in support of cross-motions for summary judgment, have asserted that no such questions exist." Bieber v. Associated Collection Servs., Inc., 631 F. Supp. 1410, 1414 (D. Kan. 1986) (citing Wright v. Credit Bureau of Georgia, Inc., 548 F. Supp. 591, 593–94 (N.D. Ga. 1982)). "Thus, the Court can resolve legal issues raised by the parties on cross-motions for summary judgment only if it has no doubt that the relevant facts are beyond dispute." Id.

The parties' disputes can be separated into three distinct issues. The first issue is whether Oyens Feed effectively overruled Shulista. The outcome of this issue determines if FCC has a perfected agricultural lien for feed purchased outside the 31-days preceding the date FCC filed a financing statement. The second issue is whether payments made by the Receiver apply to the oldest invoice or to the

invoice the Receiver intended to pay.  This determines the amount of any

agricultural lien FCC may have.  If payment is applied to the oldest outstanding

invoice, then later invoices—during which time FCC was perfected—remain

unpaid.  However, if older invoices in question remain unpaid—during which time

FCC was unperfected—the amount of FCC's agricultural lien is reduced.  The

third issue is whether the wire fees from November 21, 2011 to August 16, 2012

are considered part of the "retail cost" of the feed and therefore covered by an

agricultural lien.  The Court will take up each of these issues separately.

## B. <u>The Effect of the Iowa Supreme Court's Opinion in *Oyens Feed* on This Court's Opinion in *In re Shulista*</u>.

The parties disagree about whether the Iowa Supreme Court's opinion in

<u>Oyens Feed</u> effectively overruled this Court's previous opinion in <u>Shulista</u>.  This

issue is currently before the Court in multiple cases and the Court will address it

now.

### 1. This Court's decision in <u>In re Shulista</u>, 451 B.R. 867 (Bankr. N.D. Iowa 2011).

In <u>Shulista</u>, this Court held that the superpriority afforded by the Iowa

Agricultural Supply Dealer Lien Statute—Iowa Code § 570A—only applies to

feed purchased in the 31 days preceding the filing of the financing statement.

<u>Shulista</u>, 451 B.R. at 867.  <u>Shulista</u> is factually similar to this case.  The debtor,

Shulista, ran a hog business.  <u>Id.</u> at 870.  Shulista's primary lender was Wells

Fargo. Id. at 870–71. Wells Fargo held a blanket lien on all of Shulista's property,

which was perfected with a financing statement. Id. Shulista fed the hogs feed

supplied by Interstate Grain. Id. at 871. Interstate Grain provided $93,141.42 of

feed for Shulista's hogs between November 6, 2009 to January 8, 2010. Id. Of

that total amount, $51,365.04 was purchased in the 31 days prior to December 7,

2009, when Interstate Grain filed a financing statement. Id. No other financing

statement was filed by Interstate Grain. Id. Wells Fargo and Interstate Grain

disputed whether Interstate Grain held a perfected agricultural lien for the feed

supplied outside the 31-day period. Id. The Court ordered Shulista to sell the hogs

and hold the proceeds in a separate account pending a determination of priority

between Interstate Grain and Wells Fargo. Id. at 870.

The Shulista decision first analyzed § 570A.4—the section governing method

of perfection, which states:

> Except as provided in this section, a financing statement filed to
> perfect an agricultural supply dealer lien shall be governed by chapter
> 554, article 9, part 5, in the same manner as any other financing
> statement.
> 1. The lien becomes effective at the time that the farmer
>    purchases the agricultural supply.
> 2. **In order to perfect the lien, the agricultural supply
>    dealer must file a financing statement in the office of the
>    secretary of state as provided in section 554.9308 within
>    thirty-one days after the date that the farmer purchases
>    the agricultural supply.** The financing statement shall
>    meet the requirements of section 554.9502, subsection 1,
>    and include all applicable information described in section
>    554.9516. Filing a financing statement as provided in this

> subsection satisfies all requirements for perfection of an
> agricultural lien as provided in chapter 554, article 9.

Iowa Code § 570A.4 (emphasis added). The Court recognized that perfection is

critically important for an agricultural dealer because a dealer who is perfected

obtains superpriority over other lenders for its lien. Id. at 874–75 (citing Iowa

Code § 570A.5).

Interstate Grain argued that § 570A.4 previously required a supplier to file a

lien statement with an itemized declaration of the supply "which has been or may

be furnished" in order to perfect an agricultural lien. Id. at 875.  The statement

also required the supplier to include the "last date through" which the supplier had

agreed to supply feed. Id.  These requirements, including the language "which has

been **or may be furnished**" did not survive the 2003 Code amendments. Id.

(emphasis added).  Interstate Grain argued that the amendments were not intended

to change the scope of the lien. Id. Wells Fargo argued that the Code, as amended,

only allowed perfection for feed supplied prior to the time the financing statement

was filed. Id. at 875–76.

This Court determined that based on the plain language of § 570A.4, the

statute only allowed perfection of an agricultural lien for feed sold within 31 days

prior to filing the financing statement. Id. at 877.  The Court found no statutory

language or authority supporting a continuous or accumulating lien. Id.  Therefore,

the Court determined that if an agricultural supply dealer sold additional feed after

filing the financing statement, it would have to file another financing statement

within 31 days of selling the additional feed.  Id.  The Court found that the 2003

Code amendments removed the language allowing perfection for future feed

supplied.  Id. at 877–78.  The Court also noted that in the previous version of the

Code, perfection for future feed supplied was limited to a declared amount and did

not allow open-ended perfection for all future feed supplied.  Id. at 77.

Additionally, the Court noted that the statute was consistent with the

principle of limiting superpriority liens because they are inherently contrary to the

UCC's general priority rule of first-in-time, first-in-right.  Id. at 878.  The Court

noted that because these liens "jump" the usual priority order, they are strictly

construed and limited in nature.  Id.  The Court recognized that the limitations on

superpriority for agricultural liens were similar to the limitations the Iowa Code

imposed for harvester's liens and mechanic's liens.  Id. at 878–79.

The Court also addressed Interstate Grain's arguments that the Court's

interpretation would produce "absurd" results.  Id. at 880.  The Court noted that

multiple filings would only be required if a supplier conducted successive

transactions for longer than a 31-day period.  Id. at 880–81.  A supplier could sell

an unlimited amount of feed in one transaction and supply that feed at any time

without a perfection issue.  Id. at 881.  The Court determined that even if multiple

filings were necessary, it did not make the result "absurd" because it is part of a

11

balance between the subordination of prior-perfected lenders and encouraging a

fluid feed market.  Id.

### 2.  The Iowa Supreme Court's Opinion in <u>Oyens Feed & Supply, Inc. v. Primebank</u>, 808 N.W.2d 186 (Iowa 2011).

Shortly after the Court decided <u>Shulista</u> on April 19, 2011, the Iowa

Supreme Court decided the case of <u>Oyens Feed</u> on December 30, 2011.  <u>Oyens</u>

<u>Feed</u>, 808 N.W.2d at 186.  In <u>Oyens Feed</u>, the Iowa Supreme Court answered the

certified question of whether an agricultural lien was valid and perfected even

though a certified request had not been sent to the primary lender as required by

Iowa Code § 570A.2.  Id. at 187.  <u>Oyens Feed</u> dealt with slightly different facts.

The debtor, Crooked Creek Corp., was a hog farmer whose primary lender was

Primebank and who purchased feed from Oyens Feed.  Id.  Like in <u>Shulista</u>, and

the case presently before the court, when Crooked Creek filed for bankruptcy,

Oyens Feed asserted superpriority under the agricultural lien statute and Primebank

disputed its priority.  Id.  However, unlike in <u>Shulista</u>, Oyens Feed was not

attempting to assert priority for feed purchased outside the 31-day period.   Instead,

the issue was whether Oyens Feed's failure to send the certified request required

by Iowa Code § 570A.2 affected the ability of Oyens Feed to have the benefit of

the statutory agricultural lien.  Id. at 188.  The exact certified question that the

Iowa Supreme Court answered was:

Is the special priority afforded agricultural supply dealer liens for livestock feed under Iowa Code § 570A.5(3) susceptible to the affirmative defense afforded financial institutions under § 570A.2(3), or does § 570A.5(3) instead operate independently of or as an exception to § 570A.2(3), so as to allow an agricultural supply dealer supplying livestock feed to obtain a lien that, pursuant to § 570A.5(3), has priority over a financial institution's prior perfected security interest in the same collateral to the extent of the difference between the acquisition price of the livestock and the fair market value of the livestock at the time the lien attaches or the sale price of the livestock, whichever is greater, without the dealer having complied with the requirements imposed by § 570A.2(1) and contemplated under § 570A.2(3)?

Id.

The Iowa Supreme Court first noted the history and purpose of Chapter 570A.  Id. at 188–89.  The Iowa Supreme Court recognized that the statute was created in response to the farm crisis in the 1980s and helped encourage suppliers to sell feed on credit to farmers whose assets were otherwise encumbered by allowing them superpriority.  Id. at 188.  The Iowa Supreme Court noted that "Chapter 570A is a compromise between the interests of agricultural supply dealers and financial institutions."  Id. at 189 (internal quotations omitted).  The Iowa Supreme Court then framed the certified question with an overview of the relevant statutory provisions:

Iowa Code section 570A.5 contains three priority rules. Section 570A.5 states:

For an agricultural supply dealer lien that is perfected under section 570A.4, all of the following shall apply:

13

1. The lien shall have priority over a lien or security interest that applies subsequent to the time that the agricultural supply dealer lien is perfected.

2. *Except as provided in section 570A.2, subsection 3, the lien shall have equal priority* to a lien or security interest which is perfected prior to the time that the agricultural supply dealer lien is perfected. However, a landlord's lien that is perfected pursuant to section 570.1 shall have priority over a conflicting agricultural supply dealer lien as provided in section 570.1, and a harvester's lien that is perfected pursuant to section 571.3 shall have priority over a conflicting agricultural supply dealer lien as provided in section 571.3A.

3. *A lien in livestock feed shall have priority over* an earlier perfected lien or security interest *to the extent of the difference between the acquisition price of the livestock and the fair market value of the livestock at the time the lien attaches or the sale price of the livestock, whichever is greater.*

(Emphasis added.)

Section 570A.2 details the certified request process. Section 570A.2(3) provides a financial institution an affirmative defense to a dealer's enforcement of its lien. Section 570A.2(3) states:

Upon an action to enforce a lien secured under section 570A.3 against the interest of a financial institution secured to the same collateral as that of the lien, it shall be an affirmative defense to a financial institution and complete proof of the superior priority of the financial institution's lien that the financial institution either did not receive a certified request and a waiver signed by the farmer, or received the request and a waiver signed by the farmer and provided the full and complete relevant financial history which it held on the farmer making the purchase from the agricultural supply dealer on which the lien is based and that financial history reasonably indicated that the farmer did not have a sufficient net worth or line of credit to assure payment of the purchase price.

14

Id. at 189–90.

The Iowa Supreme Court then noted that numerous canons of statutory interpretation would effect and guide its conclusion. The Iowa Supreme Court noted that legislative intent is expressed by the omission of statutory terms and not just the inclusion. Id. at 193–94. The Iowa Supreme Court determined that because the qualification "except as provided in § 570A.2(3)" is only found in § 570A.5(2), that qualification does not apply to the other portions of § 570A.5— namely subsections (1) and (3). Id. at 193. Therefore, the Iowa Supreme Court determined that the superpriority granted by § 570A.5(3) is not restricted by the certified request procedure found in § 570A.2(3). Id. at 195. The Iowa Supreme Court determined that the legislature selectively incorporated the requirements of § 570A.2(3) by only placing the language in § 570A.5(2). Id. at 193–94.

The Iowa Supreme Court also relied on the canon of statutory interpretation that directs courts to interpret statutes so as not to make any language redundant or surplusage. Id. at 193. The Iowa Supreme Court noted that the phrase "except as provided in subsection 570A.2" found only in § 570A.5(2) would be redundant if it applied to all of § 570A.5. Id. The Iowa Supreme Court thus concluded that the failure of Oyens Feed to file the certified request from § 570A.2(3) did not prevent it from receiving the superpriority lien allowed by § 570A.5(3). Id. at 195.

15

### 3.  **Oyens Feed** Did Not Effectively Overrule **Shulista.**

After careful review, this Court does not believe that the Iowa Supreme

Court's opinion in Oyens Feed effectively overrules this Court's opinion in

Shulista.  The Iowa Supreme Court has the ultimate authority in interpreting the

Iowa Code.  Mullaney v. Wilbur, 421 U.S. 684, 691 (1975); Pearson v. Robinson,

318 N.W.2d 188, 190 (Iowa 1982).  In the absence of a decision from the Iowa

Supreme Court addressing the precise issue before it, this Court must predict how

the Iowa Supreme Court would rule if presented with this case.  See JPMorgan

Chase Bank, N.A. v. Johnson, 719 F.3d 1010, 1015 (8th Cir. 2013).  This is what

this Court did in Shulista, before Oyens Feed was decided, and what this Court

must now do again with Oyens Feed as a guide.

This Court finds that the Iowa Supreme Court's opinion in Oyens Feed is

not dispositive.  The issue in Shulista (and this case) is not the same issue the Iowa

Supreme Court addressed in Oyens Feed.  At no point in Oyens Feed did the Iowa

Supreme Court address the 31-day filing requirement for establishing superpriority

found in § 570A.4, which is the issue in this case.  Therefore, Oyens Feed does not

effectively overrule this Court's binding precedent in Shulista.

Additionally, this Court finds nothing definitive in the Iowa Supreme

Court's analysis in Oyens Feed to demonstrate conclusively that the Iowa Supreme

Court would interpret the statute differently than this Court did in Shulista.  The

16

Iowa Supreme Court's decision in <u>Oyens Feed</u>, like this Court's decision in

<u>Shulista</u>, was based primarily on the plain language of the statute.

The Code section granting lien priority is split into three sections.  Iowa

Code § 570A.5.  The first section was not relevant in <u>Oyens Feed</u>, in <u>Shulista</u>, or

here.  The second section grants to the supplier priority equal to the primary lender.

<u>Id.</u> at § 570A.5(2).  This second section contains the language referring to the

certified request procedure found in § 570A.2(3).  <u>Id.</u>  The third section is the

section granting a supplier superpriority.  <u>Id.</u> at § 570A.5(3).  This third section

does not contain the language referring to the certified request procedure.  <u>Id.</u>  The

Iowa Supreme Court found that the inclusion of the language referring to the

certified request procedure in section two was the Iowa Legislature's purposeful

omission from section three.  <u>Oyens Feed</u>, 808 N.W.2d at 193.  Therefore, the

Court found that failure to follow the certified request procedure found in

§ 570A.2(3), which is required for priority under subsection two, did not prohibit

the superpriority granted by subsection three.  <u>Id.</u> at 195.  The Court's decision in

<u>Oyens Feed</u> was based on the plain language of the statute.  <u>See id.</u> at 193–94.

This is the same basis of this Court's reasoning in <u>Shulista</u> and the Court's holding

in this case today.  Iowa Code § 570A.4(2) states:

> **In order to perfect the lien, the agricultural supply dealer must file a financing statement in the office of the secretary of state as provided in section 554.9308 within thirty-one days after the date that the farmer purchases the agricultural supply.** The financing

> statement shall meet the requirements of section 554.9502, subsection
> 1, and include all applicable information described in section
> 554.9516. Filing a financing statement as provided in this subsection
> satisfies all requirements for perfection of an agricultural lien as
> provided in chapter 554, article 9.

Iowa Code § 570A.4(2) (emphasis added). The plain language of the statute requires the supplier to file the financing statement within 31 days of purchase. Id. The Court finds that Oyens Feed does not change this determination.

FCC argues that the Iowa Supreme Court's focus on a fluid feed market and reducing repetitive paperwork in Oyens Feed shows that if the Court were to decide the Shulista issue today, it would hold that sales outside of the 31-day period are covered by the agricultural lien in order to reduce the number of financing statements required. This Court cannot, with any certainty, say that this is correct or incorrect. The Supreme Court in Oyens Feed did buttress its statutory interpretation with legislative goals of encouraging a fluid feed market. However, this Court believes the certified request procedure is different from filing a financing statement, discussed in Shulista and relevant here.

These processes are in fact very different. The certified request procedure is a multi-step process. See Iowa Code § 570A.2. First, a supplier must send a request to the farmer's secured lender, which meets the requirements for personal service under the Iowa Rules of Civil Procedure. Id. at § 570A.1(6). The certified request must state the amount of the proposed supply purchase, the terms of the

18

sale, and must also include a waiver of confidentiality by the farmer and a fee.  Id. at § 570A.2(1).  Within four days of receiving the request, the bank must respond with a memorandum stating if the farmer has sufficient net worth or a line of credit to assure payment.  Id.  If the memorandum states that the farmer has sufficient net worth or a line of credit to assure payment, then it constitutes "an irrevocable and unconditional letter of credit."  Id.  If the memorandum does not state that the farmer has sufficient net worth or a line of credit to assure payment, then the financial institution is required to transmit to the supply dealer the relevant financial history of the farmer.  Id.  After that exchange is completed, or the bank has not responded, the dealer can supply the feed and file a financing statement securing the lien under § 570A.3.  Id. at § 570A.2(2).

The process involved with filing a financing statement is quite different.  In order to obtain an agricultural lien, the dealer has 31 days from the date of purchase to file the financing statement.  The financing statement, unlike the certified request procedure, is not prerequisite paperwork that must go back and forth between parties while livestock wait for food.  It is filed after the sale and after the livestock has been fed.  The Court declines to read Oyens Feed as removing every requirement for establishing priority of an agricultural lien in favor of the policy of enhancing a fluid feed market.

This Court admittedly discussed the § 570A.2 certified request procedure at several points in <u>Shulista</u>.  <u>See</u> <u>Shulista</u>, 451 B.R. at 867.  This Court, however, did not rely on the compliance with that procedure by the party claiming the superpriority lien.  <u>Id.</u> at 876.  In fact, the Court pointed out the agricultural supplier provided all proper compliance with the certified request procedure in that case, but simply concluded that was not determinative in whether a superpriority lien was created.  <u>Id.</u>  This conclusion seems to be similar to, not in contradiction of, the Iowa Supreme Court's holding in <u>Oyens Feed</u>.

To the extent FCC argues here that <u>Oyens Feed</u> required a more flexible reading the 31-day filing language in the superpriority subsection of the statute, this Court does not disagree.  However, a more flexible reading does not mean the Court can simply disregard the specific statutory language.  The Legislature used language specifically more favorable to lenders and banks on this issue.  This Court can only presume the Legislature intended to do so here—whether or not that was the correct policy to adopt.  While this Court does not necessarily agree with that choice, the Court is not free to substitute its view for that of the Legislature.

Therefore, the Court holds that <u>Oyens Feed</u> did not effectively overrule or otherwise alter <u>Shulista</u>, nor is this Court persuaded that the Iowa Supreme Court would decide this issue differently if it was before the Iowa Supreme Court today.

20

This Court is bound by, and still agrees with, its interpretation in <u>Shulista</u> of the language that the Iowa Legislature—not this Court—chose and adopted in § 570A.4.  Therefore, this Court holds that FCC has a perfected, superpriority agricultural supply lien for feed purchased during the 31 days preceding the filing of a financing statement.

### C. <u>FCC's Decision to Credit Payments Towards the Oldest Outstanding Invoice is not Contrary to the Law.</u>

While the Court has determined that <u>Shulista</u> applies and FCC's lien is limited to the 31 days prior to its lien filing, this does not necessarily determine the amount of proceeds FCC is entitled to in this case.  Some invoices remain unpaid.  The parties dispute whether the payments the Receiver has already made should be applied in chronological order, starting with the oldest outstanding invoice, or whether payments the Receiver has already made should be matched with the specific invoices that the Receiver intended to pay. The outcome of this dispute affects whether the currently unpaid invoices are from a period within 31 days prior to a filing, and therefore perfected, or from a period outside the 31 days, and therefore unperfected.

A payment for $45,918.09 was made to FCC on October 6, 2011.  FCC inadvertently applied that payment toward Debtors' outstanding balance twice.  FCC has since reversed the accidental second application of that payment— creating unpaid invoices from fall 2011.  Under <u>Shulista</u>, FCC did not have a

perfected agricultural lien until May 27, 2012.  Thus, FCC was not perfected in fall 2011.

FCC argues that the payments the Receiver has already made towards Debtor's outstanding balance should be credited towards the oldest outstanding invoices. This would result in full payment of the fall 2011 invoices, for which FCC was not perfected.  This would leave the most recent invoices, which are from August 27, 2012 to September 10, 2012, unpaid.  Because FCC has a perfected agricultural lien under Shulista during part of this period, FCC would be entitled to partial payment of these invoices.

The Receiver argues that it was specifically paying later invoices, not the invoices on which FCC reversed the accidental credit.  FCC had a perfected agricultural lien for the later invoices, and if the payments are applied to these later invoices, FCC would not be entitled to payment to the invoices from fall 2011 because it was unperfected during that period.

Because the Court has determined Shulista still controls this case, the method FCC applies the payments effectively determines the amount FCC gets paid. Neither party has cited, nor has the Court found, an Iowa statute directing how payments must be applied in this situation.  Therefore, the Court turns to Iowa common law for direction.  If the parties have an agreement directing how payments are applied, that agreement controls.  Johnson v. Foster, 101 N.W. 741,

22

742 (Iowa 1904).  In the absence of an agreement, and when the parties have an

open account—as opposed to distinct individual debts, such as notes—the default

rule is that payments are applied to the oldest items.  <u>See, e.g. id.</u> (applying this

default rule); compare <u>Lumber Supply Inc. v. Hull</u>, 158 N.W.2d 667, 669 (Iowa

1968) (applying a different rule when the debtor has multiple accounts).

In this case, both parties have argued that it was the course of dealing between

the parties to apply the payments in opposite ways.  FCC argues that the course of

dealing between the parties was to apply the payments to the oldest outstanding

debt.  The Receiver argues that it was the course of dealing between the parties to

apply the payment to the invoice the Receiver referenced in its records.  However,

neither party has argued or put forth evidence of an explicit agreement between

them to apply the payments in a certain way.  Since there is no agreement between

the parties as to how to apply the payments, the default rule applies and the Court

finds that the payments apply to the oldest outstanding invoice.

Since the oldest outstanding invoice is paid first, $45,918.09 is outstanding

from the most recent invoices.  These are invoices F91268, F91179, F91114,

F91045, F90896, F90892, F90777, and $3,331.22 of invoice F90616.  These

invoices span from August 27, 2012 to September 10, 2012.  However, under

<u>Shulista</u>, FCC was not secured for this entire period.  FCC filed a financing

statement on September 4, 2012.  Under <u>Shulista</u>, that financing statement secures

23

FCC with superpriority from August 4, 2012 to September 4, 2012.  During that time, FCC supplied Debtor with $20,404.03 of feed from the unpaid invoices listed above.  However, those invoices listed above that occurred after September 4, 2012 are not covered by the agricultural lien and total $25,514.06.  Therefore, Debtor has an outstanding balance of $45,918.09 for unpaid invoices, but FCC only has a superpriority agricultural lien in the amount of $20,404.03.

### D. <u>There Are Genuine Issues of Material Fact as to Whether the Fees Claimed Are a Part of the Retail Cost of the Feed.</u>

The parties disagree over whether FCC's wire fees are covered under FCC's agricultural lien.  Iowa Code § 570A.3 gives a supplier an agricultural lien for "the retail cost of the agricultural supply, including labor provided."  Iowa Code § 570A.3.  "Retail cost" is not defined in the Code and there is little direction in the case law.  One case interpreting this code section determined that the meaning of "labor provided" included delivery charges, including fuel, but declined to determine whether "retail cost" included interest charges based on genuine issues of material fact as to whether the lender was entitled to interest in the first place. <u>In re Coastal Plains Pork, LLC</u>, 09-08367-8-RDD, 2012 WL 6571102 (Bankr. E.D.N.C. Dec. 17. 2012).  Another court interpreted "retail cost" and found that interest and financing charges were not part of the "retail cost."  <u>United Prairie Bank v. Galva Holstein Ag, L.L.C.</u>, A13-0009, 2013 WL 6223416 (Minn. Ct. App. Dec. 2, 2013).  The court in <u>United Prairie</u> determined that the Iowa Legislature's

24

inclusion of "labor" was the exclusion of other types of fees associated with the feed supplied.  Id.

The Court is unable to determine from the record whether the amounts FCC claims in addition to the cost of the feed itself are covered by an agricultural lien as part of the "retail cost" of the feed.  First, although both parties state that there are no genuine issues of material fact, they allege different amounts for various fees. The Receiver states that FCC is requesting $670.00 in wire fees and argues that these are not part of the retail cost.  However, FCC states that it is requesting $481.27 as "other appropriate credits and debits including wire transfer fees." Therefore a genuine issue of material fact exists as to the amount sought above and beyond the bare cost of the feed itself.  Even if the parties agreed as to the amount being requested by FCC, the Court would still be unable to make this determination because the record is not clear as to the purpose of the additional costs.  The Receiver states that they are for wire transfer fees, while FCC vaguely describes them as "other appropriate credits and debits including wire transfer fees."  Therefore, even if the parties agreed to the amount, there is not enough information in the record to determine if the fees are a part of the "retail cost." Accordingly, the Court denies summary judgment on this issue.

## CONCLUSION

The Court determines that <u>Oyens Feed</u> did not effectively overrule or nullify the effect of <u>Shulista</u> and therefore FCC has a perfected agricultural lien for feed purchased 31 days prior to each of its financing statements filed.  Additionally, the Court finds that the payments by Debtor and the Receiver to FCC apply to the oldest outstanding invoice first.  Therefore, FCC has a claim for the $45,918.09 outstanding balance.  However, since FCC only had an agricultural lien in place for part of the time it provided the feed for those invoices, only $20,404.03 of that claim is entitled to superpriority as an agricultural lien.  The Court finds that there is a genuine issue of material fact which precludes summary judgment on whether FCC is entitled to additional fees.

**WHEREFORE**, Ernst & Young, Inc., as Receiver for Big Sky Farms, Inc.'s Motion for Summary Judgment is **GRANTED IN PART**.

**FURTHER,** Farmer's Cooperative Company, Hinton Iowa's Motion for Summary Judgment is **GRANTED IN PART**.

Dated and Entered:  April 18, 2014.

_____
**THAD J. COLLINS**
**CHIEF BANKRUPTCY JUDGE**