# UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| **In re:** ) | |
| ) | **Chapter 15** |
| **Petition of Big Sky Farms Inc. by** ) | |
| **Ernst & Young, Inc., as its Receiver** ) | |
| ) | **Bankruptcy No. 12-01711** |
| **Debtor in a Foreign Proceeding.** ) | |
| ) | |
| ) | |
| **Farmers Cooperative Company,** ) | |
| **Hinton, Iowa,** ) | |
| ) | |
| Plaintiff, ) | **Adversary No. 13-09038** |
| ) | **[Not for Publication]** |
| v. ) | |
| ) | |
| **Ernst & Young Inc., in its official** ) | |
| **capacity as Receiver for Big Sky Farms** ) | |
| **Inc., and Big Sky Farms, Inc.** ) | |
| ) | |
| Defendants. ) | |

_____

## RULING ON CROSS-MOTIONS TO AMEND RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

These matters came before the Court on the parties' Cross-Motions to Amend the Court's Ruling on Cross-Motions for Summary Judgment. Plaintiff Farmers Cooperative Company, Hinton, Iowa and Defendant Ernst & Young, Inc., in its official capacity as Receiver for Big Sky Farms, Inc., each filed Motions to Amend the Court's April 18, 2014 Summary Judgment ruling. The Court held a telephonic hearing on May 30, 2014. Lance Ehmcke appeared on behalf of

Plaintiff Farmers Cooperative Company, Hinton, Iowa. Julie McLean and Elizabeth Meyer appeared on behalf of Debtor in a Foreign Proceeding, Big Sky Farms, Inc., and Ernst & Young, Inc., in its official capacity as Receiver for Big Sky Farms, Inc., as appointed in the Canadian bankruptcy proceeding and recognized by this Court in this Chapter 15 case. The Court took the motions under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

## STATEMENT OF THE CASE

Farmers Cooperative Company, Hinton, Iowa ("FCC") filed this case asserting its lien priority in cash held in a bank account by Ernst & Young, Inc. (the "Receiver"). The parties dispute whether Receiver, which holds approximately $1.5 million to pay Debtor's creditors, has paid FCC's claim to the extent required. The parties filed Cross-Motions for Summary Judgment. On April 18, 2014, the Court issued a ruling granting, in-part, and denying, in-part, these motions. Both parties now ask the Court to amend its ruling.

## BACKGROUND AND PARTIES' ARGUMENTS

Debtor is a Canadian corporation that operates part of its hog business in Iowa. Debtor had serious financial problems and filed for bankruptcy in Canada. On September 10, 2012, the Canadian Court of Queen's Bench for Saskatchewan, Judicial Centre of Saskatoon appointed Ernst & Young, Inc. as Receiver for Debtor.

2

On September 12, 2012, Receiver filed a Chapter 15 Petition with this Court, seeking recognition of the foreign proceeding. On a request from Receiver, this Court entered an Order on December 3, 2012 recognizing the Canadian bankruptcy proceeding, granting comity, and giving full force and effect to the Canadian proceedings. The Order also authorized Receiver to act for Debtor with respect to Debtor's property in the United States. The Order required Receiver to feed and then sell Debtor's entire remaining hog inventory once it was ready for market. The Order then required Receiver to deposit $1,500,000 of the sale proceeds into an account to pay Debtor's creditors. Additionally, the Order specifically provided that liens on the livestock would continue in the proceeds from the sale. Receiver sold the hogs, and, as of January 11, 2013, the proceeds in the account totaled $1,506,928.04.

FCC is a feed supplier to Debtor. FCC submitted a proof of claim to Receiver for $120,444.51. On February 1, 2013, Receiver paid FCC $74,045.15 of its claim. FCC filed this adversary, seeking payment of the remainder of its claim from the hog proceeds. The parties filed Cross Motions for Summary Judgment—both alleging that there were no genuine issues of fact.

On summary judgment, FCC alleged that the $46,399.36 remaining from its proof of claim was both unpaid and secured as an agricultural supply lien. First, FCC argued that nine invoices from 2011 were accidentally marked as paid, when

3

in fact, payment was never received. Second, FCC argued that agricultural supply liens were not limited to the 31 days before filing a financing statement—contrary to the Court's previous holding in In re Shulista—and therefore the entire unpaid amount was secured. FCC argued in the alternative that the unpaid invoices were paid by earlier payments, and therefore the invoices remaining unpaid were the most recent invoices— and fell within the 31 days. Receiver argued that under the 31-day rule, FCC was unsecured for any and all of the allegedly unpaid invoices. Receiver thus concluded it had paid FCC to the full extent necessary because it had no unpaid invoices that fit under the 31-day rule.

In the Court's Summary Judgment Ruling, it determined that FCC had a perfected agricultural lien for feed purchased 31 days before each of the financing statements filed, following the Court's earlier ruling in In re Sulista. It also found that the payments already made by Debtor/Receiver to FCC applied to the oldest outstanding FCC invoice first. The Court concluded that FCC's secured claim had not been paid in full, and FCC had a secured a claim for $20,404.03 under the agricultural lien superpriority. The Court further concluded that there were genuine issues of material fact regarding whether FCC's claim could include some additional fees.

FCC filed a Motion to Amend or Correct Ruling on April 28, 2014. FCC asks the Court to correct its factual finding on the number of UCC-1 financing

4

statements it filed. Receiver does not object to the Court correcting this factual finding. FCC also asks the Court to amend its ruling on the amount of FCC's secured claim to reflect two UCC-1 filing statements that FCC made but the Court's ruling omitted. Receiver objects to this amendment based on arguments made in its own Motion to Amend.

Receiver also filed a Motion to Amend or Enlarge Ruling. Receiver argues that the Court incorrectly adopted FCC's assertion that nine invoices from 2011 remain unpaid. Receiver argues that there is a genuine issue of material fact on whether those nine invoices were paid and asks the Court to amend this finding. Receiver also argues that the Court erred in ruling that Receiver's payments to date of $74,045.15 applied to the unsecured invoices instead of the ones filed within the 31-day period. Receiver argues that this ruling should be amended because it conflicts with the Court's previous order on February 1, 2013 directing Receiver to pay all secured claims against Debtor. FCC resists, arguing that Receiver is attempting to re-litigate established issues.

## CONCLUSIONS OF LAW AND DISCUSSION

A. **Applicable Law**

The parties both move for an amendment under Federal Rule of Civil Procedure 52(b), applicable in bankruptcy proceedings under Federal Rule of Bankruptcy Procedure 7052. Rule 52(b) states:

5

> **(b) Amended or Additional Findings.** On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59.

Fed. R. Civ. P. 52(b). The purpose of Rule 52(b) is to "provide the court with the opportunity to correct manifest errors of law or fact." Pro Edge L.P. v. Gue, 377 F. Supp. 2d 694, 698 (N.D. Iowa 2005).

There were three issues on summary judgment. The first issue was whether the Court's ruling in In re Shulista, 451 B.R. 867 (Bankr. N.D. Iowa 2011), which held that agricultural supply liens only apply to feed purchased within 31 days of a financing statement, was effectively overruled by the Iowa Supreme Court's opinion in Oyens Feed & Supply Inc. v. Primebank, 808 N.W.2d 186, 190 (Iowa 2011) (holding that the certified request procedure was not a necessary prerequisite to qualify for agricultural lien superpriority). The second issue was the amount of FCC's claim that remains unpaid and whether that claim is secured. The third issue was whether non-feed costs could be included in an agricultural supply lien as part of the "retail cost" of the feed. The Court will reexamine each of these three issues separately, considering the parties' arguments for amendment.

B. **The Court's Ruling that *In re Shulista* Remains Unaffected by the Iowa Supreme Court's Opinion in *Oyens Feed* Stands.**

The first issue on summary judgment was whether Oyens Feed effectively overruled Shulista. In the Court's ruling on summary judgment, the Court

6

determined that Oyens Feed did not affect Shulista. Although FCC continues to disagree with that determination, it does not ask the Court to amend its ruling on that matter. The Court's ruling upholding the 31-day rule stands.

### C. **The Court Amends Its Ruling on the Amount of FCC's Perfected Agricultural Lien.**

The second issue addressed on summary judgment was the amount of FCC's agricultural lien under the 31-day rule. First, FCC argues that the Court erred by finding that there were three UCC-1 financing statements, instead of five. Receiver does not dispute that there are five UCC-1 financing statements. The Court has reexamined the record, notes its mistake, and amends its factual findings to include FCC's two additional UCC-1 financing statements, which were filed on October 4, 2012 and October 31, 2012.

FCC also asks the Court to amend its ruling to increase the outstanding amount of its agricultural lien to reflect the two additional UCC-1 financing statements. FCC argues that these financing statements lengthen the period FCC was perfected under the 31-day rule.

Receiver resists this amendment and argues that the Court made two legal errors. First, Receiver argues that the Court incorrectly adopted FCC's statement that FCC was not paid for nine invoices in 2011. Receiver argues that it not only disputes whether those invoices were paid by later payments—as the Court stated in its Summary Judgment Ruling—but also that nine invoices were accidentally

7

marked as paid without actually receiving payment. In short, Receiver argues that there are genuine issues of material fact about the amount of FCC's unpaid claim.

The Court again as reviewed the record, notes the dispute of fact, and thus amends its ruling on the amount of FCC's unpaid claim. The record reveals that Receiver did in fact dispute whether the nine invoices were unpaid and not just whether those allegedly unpaid invoices should be paid because of their unsecured status. Therefore, the Court finds there are genuine issues of material fact on the amount of FCC's unpaid claim. The Court thus amends its ruling to find genuine issues of material fact as to the unpaid amount of FCC's claim. Because of these genuine issues of material fact, the Court denies the portion of FCC's Motion asking the Court to amend its ruling to increase its unpaid secured claim to reflect the additional financing statements. FCC's unpaid balance will be determined at trial.

Receiver's second argument is that the Court incorrectly ruled on summary judgment that Receiver's $74,045.15 payment on February 4, 2013 applied to invoices from a period in 2011 during which FCC was unsecured under the 31-day rule. Receiver argues that the Court's ruling is contrary to the Court's previous order directing Receiver to pay only *secured* claims. Because the Court finds genuine issues of material fact on the amount of FCC's claim that is unpaid, the Court need not address the issue further at this time.

The Court will, however, address Receiver's argument that the Court's ruling on this issue seemed to gut the very rule it was applying. While the Court disagrees, it does find that the Summary Judgment Ruling did not clearly explain this portion of its ruling. The Court did not intend to state or imply that Receiver's $74,045.15 payment on February 4, 2013 paid invoices from 2011 when FCC was unsecured under the 31-day rule. The Court found that the nine invoices from 2011 were paid by Debtor—not Receiver. The invoices remaining unpaid at the time of Receiver's February 4, 2013 payment (per court order) were for the most recent invoices, during which time FCC was secured. Therefore, the Court amends its ruling to clarify this point. In spite of this clarification, given the Court agrees with Receiver's first argument and finds that there are genuine issues of material fact on whether any of FCC's invoices remain unpaid, the secured status of those potentially unpaid invoices under the 31-day rule will also be determined at trial.

### D. **There Are Genuine Issues of Material Fact About Whether the Additional Fees Claimed Are a Part of the Retail Cost of the Feed.**

The third issue addressed on summary judgment was whether certain fees from November 21, 2011 to August 16, 2012 are part of the "retail cost" of the feed under Iowa Code § 570A.3 and therefore covered by a potential agricultural lien. The Court ruled that there were genuine issues of material fact on the amount and purpose of the fees and therefore could not determine from the record whether

9

the fees should be included as part of the "retail cost." Neither party asks the Court to amend its ruling on this matter. The Court's ruling on this issue stands.

## CONCLUSION

The Court has determined that amendments are necessary to its April 18, 2014 ruling on the parties' Cross-Motions for Summary Judgment. The Court corrects its factual finding to recognize that FCC filed two additional UCC-1 financing statements—one on October 4, 2012 and one on October 31, 2012. The Court also amends its ruling to find that there are genuine issues of material fact on the unpaid amount of FCC's claim and the secured status of that potentially unpaid claim. This amendment does not affect the Court's ruling regarding the continued validity of Shulista.

**WHEREFORE**, Ernst & Young, Inc., as Receiver for Big Sky Farms, Inc.'s Motion to Amend or Enlarge Ruling is **GRANTED IN PART**.

**FURTHER,** Farmer's Cooperative Company, Hinton Iowa's Motion to Amend or Correct Ruling is **GRANTED IN PART**.

Dated and Entered: October 21, 2014

_____
**THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE**